IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RICHARD GERBER, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 1:06-mc-00032-RMU |
| ) | |
| UNITED STATES OF AMERICA, ) | Hon. Ricardo M. Urbina |
| ) | |
| Respondent. ) | |

**SUPPLEMENTAL MEMORANDUM OF RICHARD GERBER IN SUPPORT OF PETITION TO QUASH IRS SUMMONS, OR IN THE ALTERNATIVE, TO REQUEST DISCOVERY.**

Curtis, Mallet-Prevost, Colt & Mosle, LLP
1200 New Hampshire Ave., N.W.
Washington, D.C. 20036
Samuel Rosenthal (DC Bar No. 329516)
srosenthal@cm-p.com
(202) 452-7340

Rosenau & Rosenau
1304 Rhode Island Ave., N.W.
Washington, D.C. 20009
(202) 387-8680
Kenneth.Rosenau@rosenaulaw.com

Counsel for Petitioner
Richard Gerber

## Table of Contents

Page #

PRELIMINARY STATEMENT ................................................................................................ 3

    A.    The SEC Investigation and MSA Receivership. ................................................... 3

    B.    The Protective Orders Issued in the MSA Case. .................................................. 4

    C.    The IRS Summons. ................................................................................................ 6

    D.    The Government's Admission that the Justice Department Not Only Reviewed Material Covered by the Protective Order, But Regards Gerber as a "Target" of the Investigation. ............................................... 7

ARGUMENT .................................................................................................................................. 9

    I.    THE GOVERNMENT HAS NO RIGHT TO USE THE ADMINISTRATIVE SUMMONS AUTHORITY WHILE A CRIMINAL REFERRAL IS IN EFFECT AND AFTER USING EVIDENCE OBTAINED IN VIOLATION OF THE COURT'S PROTECTIVE ORDERS ................................................................. 9

        A.    Section 7206 Prohibits the Use of the Summonses in Question Once the IRS Has Referred the Matter to the Department of Justice. ..................... 9

        B.    The Justice Department's Denials that a Criminal Referral has Occurred Cannot be Given Any Weight As They Are Belied by the Evidence.. ............................................................................................................ 13

    II.    THE GOVERNMENT CANNOT ISSUE SUMMONSES BASED UPON INFORMATION OBTAINED IN VIOLATION OF THE PROTECTIVE ORDERS ISSUED IN UTAH. ................................................................................... 14

        A.    The Protective Orders Precluded Use of the Depositions Given by Gerber in Utah. ................................................................................................... 14

        B.    Petitioner is Entitled, at a Minimum, to Discovery to Determine Whether the Government Can Meet Its Burden. ................................................ 15

CONCLUSION ........................................................................................................................... 17

3798272v2

## Table of Authorities

**Cases**

Barry v. United States,
   275 U.S. "App. D.C., 218, 865 F.2d 317 (D.C. Cir. 1989) .................................................... 15

Fielstad v. Honda Motorr Co.,
   762 F.2d 1334 (9th Cir. 1985) ........................................................................................... 15

United States v. Blalick,
   844 F.2d 844 F2d 1546 (11th Cir. 1988) ........................................................................... 15

*United States v. Chase Manhattan Bank,
   598 F.2d 321 (2nd Cir. 1979) ....................................................................................... 13, 14

*United States v. Flemmi,
   233 F.Supp.2d 75 (D. Mass. 2000) ............................................................................. 15, 17

United States v. Henderson,
   133 F.R.D. 28 (D.N.C. 199) ............................................................................................. 12

*United States v. La Salle Nat'l Bank,
   437 U.S. 298 (U.S. 1978) ............................................................................................ 11, 12

United States v. National Medical Enterprises, Inc.,
   792 F.2d 906 (9th Cir. 1986) ............................................................................................ 15

*United States v. Serubo,
   604 F.2d 807 (3d Cir. 1979) .......................................................................... 12, 14, 16, 17

United States v. Williams,
   504 U.S. 36, 118 L.Ed.2d 352, 112 S.Ct. 1735 (1992) .................................................... 16

Wyle v. R.J. Reynolds Industries, Inc.,
   709 F.2d 585 (9th Cir. 1983) ............................................................................................ 15

**Statutes**

26 U.S.C. § 6103(b) ................................................................................................................. 7

26 U.S.C. § 6103(h)(3)(8) ........................................................................................................ 7

26 U.S.C. § 7602 ............................................................................................................. passim

26 U.S.C. § 7602(d) ................................................................................................... 1, 7, 9, 10

28 U.S.C. § 547(1) ................................................................................................................. 11

Petitioner Richard Gerber, by counsel, respectfully requests permission to submit this supplemental memorandum in further support of the Petition to quash an IRS summons served upon Paine Webber (later known as UBS) in connection with an investigation into Dr. Gerber's tax returns for 1999-2005. Following the filing of the earlier Memoranda, counsel for Petitioner has become aware of important new information bearing on the instant Petition to quash that summons, including the following:

- While the Government opposes the Petition to quash the summons by contending that "at this time there is no 'Justice Department referral'" by the IRS recommending a criminal prosecution of Dr. Gerber, Government Memorandum in Opposition to the Petition to Quash ("Gov't Memo") para. 9, counsel for Dr. Gerber has now learned that Gerber is and was, in fact, a "target" of a Justice Department criminal investigation and likely to be indicted. As such, the summons is improper under 26 U.S.C. § 7602;

- Information, documents and deposition testimony from proceedings in District Court in Utah in the MSA litigation was improperly provided to, and reviewed by, the Justice Department, in violation of two Protective Orders in that case. Additionally, it is possible if not likely that these deposition were shared or read with IRS Criminal Investigative Division, and that these violations contributed to, and possibly prompted, the summonses here.

The above facts are of critical importance to the Petition to quash now before the Court. These facts undermine the Government's ability to sustain its burden of showing that the summons was issued in good faith, and does not violate 26 U.S.C. § 7602(d), which prohibits the use of an IRS summons after a criminal referral to the Justice Department has occurred. Such facts also show a violation of clear orders of a federal district court Utah, which prohibited the Justice

3798272v2

Department from obtaining confidential testimony and information from Dr. Gerber under the guise of protecting him, and then using such information against him in a criminal tax investigation.

Thus, the above facts must also be viewed against a backdrop in which the Government (through the IRS) is now seeking to take a position that dramatically contradicts the position taken by it (through the SEC) in another case involving Dr. Gerber, which was brought by the SEC in the District Court in Utah. That case involved allegations by the SEC that a financial services firm, Merrill Scott & Associates ("MSA"), had defrauded Dr. Gerber and others by providing legal, accounting and other professional advice relating to the transactions now allegedly being investigated jointly by the Justice Department and IRS. Contrary to the claim made in the Government's Memorandum to this Court, that Dr. Gerber is the legal owner of those same assets and entities at issue in the summons, the SEC took the position in Utah District Court that Dr. Gerber was defrauded as part of a Ponzi scheme into relinquishing any claim to legal ownership over these same assets and entities.

Accordingly, it now turns out that all the while the Government was taking the positions in the Utah District Court that Dr. Gerber had been induced (albeit by fraud) to give up ownership and control of funds, and therefore had no right to have such funds returned to him instead of being placed in receivership, the Government was secretly trying to build a case that Dr. Gerber was in fact the owner of such assets and entities, and had engaged in tax fraud. Clearly, the Government should not be allowed to use the IRS administrative summons authority for such purposes, and cannot meet its obligation of showing that the summons was issued in good faith.

Based on the violations both of 26 U.S.C. § 7602 and the Protective Orders in Utah, the Court should quash the summons issued by the IRS. Petitioner requests, in the alternative that

the Court allow him to take discovery from the Government to determine the extent and scope of such violations, and the appropriate relief.[1]

## PRELIMINARY STATEMENT

The IRS summons in question to Paine Webber was issued on or about January 10, 2006. It sought records relating to accounts held at Paine Webber believed to relate to Dr. Gerber's tax liability for years 1999-2005.[2] In addition to this summons, the IRS has issued summonses to three other banks, as well as to counsel for Dr. Gerber. As explained more fully below, these summonses were issued after the matter was referred to the Justice Department, and after violations of at least two court orders issued by the Court in litigation involving an SEC action against MSA and related entities. MSA is a financial services firm that provided legal, accounting and financial advice to Dr. Gerber and numerous other investors.

A.  **The SEC Investigation and MSA Receivership**.

In 2001, the Securities and Exchange Commission ("SEC") commenced an investigation into MSA's scheme to defraud Dr. Gerber and other clients of MSA. The SEC filed a complaint against MSA and related entities on January 15, 2002, following a seizure of the books and records. The SEC complaint alleged that Merrill Scott retained professionals to provide "expert" advice on the clients' financial plans. Those "professionals included attorneys, accountants, financial planners, asset managers and persons with banking expertise." Id., SEC Complaint, para. 21. The Complaint further alleged that MSA committed fraud, misrepresentation and misappropriation of client funds. See Rosenthal Dec., para. 2.

---

[1] We are not requesting that the Court issue a ruling excluding such evidence from trial in the event that Dr. Gerber is indicted on any charges. We recognize that no such indictment is pending, and that any decision on such issues would be inappropriate at this juncture.

[2] Dr. Gerber continues to press the arguments contained in his earlier memoranda, including his argument that it was improper to investigate taxes for years which were not even due when the summons was issued in 2006. Ses United States v. Myslajek, 440 F.Supp. 5 (D. Minn. 1977), aff'd 568 F.2d 55 (8th Cir. 1977).

-3-

The SEC found that instead of providing legal and other professional advice to assist clients in their financial planning:

> Since in or about 1998, Merrill Scott has misappropriated investor funds and securities for uses contrary to representations made to investors. Investor funds have been used to pay for . . . personal expenses and extravagant lifestyle [of an MSA principal]. Investor funds have been used for the obligations and expenses of Merrill Scott and to invest in start-up companies unaffiliated with Merrill Scott. This misappropriation of investor funds is ongoing. . . . . In other words, Merrill Scott is currently operating a Ponzi scheme.

MSA Complaint, para. 2. The SEC complaint against MSA then proceeded to lay out the "ponzi scheme" by MSA to defraud investors. See MSA Complaint, para. 41-44. One such client was Dr. Gerber, who had invested substantial sums of money with MSA.

### B.     The Protective Orders Issued in the MSA Case.

In order to protect Dr. Gerber and other victims of the MSA fraud, and at the SEC's request, the court appointed a receiver on January 24, 2002. See Litigation Release 17342 and Rosenthal Dec., para. 3. The court in Utah empowered this receiver to conduct discovery and secure assets for the protection of these investor victims.

After the receiver was appointed, he began taking testimony from the victim-clients of MSA, and indicated his intention to take Dr. Gerber's deposition, and requested the production of documents from Dr. Gerber and others. On February 3, 2004, a Protective Order was obtained prior to Dr. Gerber's deposition. See Rosenthal Dec., para. 4. By its explicit terms, that Order applied to all "deposition testimony" as well as "tax returns," "financial reports" and any other statements or documents produced by Dr. Gerber. Id. It went on to expressly prohibit the Government or anyone else for that matter from making any use of the deposition testimony or materials produced by Dr. Gerber for any purpose other than the SEC's prosecution of any action against MSA. Id. The Order states that such testimony and any other financial information provided by Dr. Gerber:

> shall be used solely for purposes of litigating this action and shall not
> be used, directly or indirectly, by parties, counsel, or non-parties
> receiving it for or in connection with any other purpose of any kind....

Id., para. It also made clear that the phrase "this action" included only the SEC proceedings against MSA, and would therefore not have included an action by the IRS against any of the victims of MSA's fraud. The Order stated

> The term "this action" shall be defined as the above-captioned matter
> and all related litigation commenced by the Receiver or the Securities
> and Exchange Commission (the "Commission").

After issuance of this Protective Order, the Gerber deposition took place on February 9 and 10, 2004. Rosenthal Dec., para. 5. Dr. Gerber was deposed for two full days, and asked questions about numerous documents covered by the Protective Order.

A second Protective Order was obtained in December, 2004. A group of investors applied to the Court for a protective order that would preclude any use of depositions or documents by any agency other than the SEC. However, when an Order was prepared by the receiver which went substantially beyond such language, and in fact, allowed the receiver to share documents with agencies other than the SEC, investor-clients of MSA objected and again sought an appropriate protective order from the court. On December 8, 2004, the court entered an order striking out any reference to sharing documents with "any other department or agency of the federal government." Rosenthal Dec., para. 8.

Nothing in either Protective Order suggested that agencies other than the SEC could obtain confidential information obtained from Dr. Gerber under the guise of having a receiver appointed to protect the interests of client-victims of MSA's fraud, and then use such information to prosecute Dr. Gerber.[3]

---

[3] While the Order allowed documents and testimony to be provided to the U.S. Attorney in Utah, it was clear that any sharing of documents was limited to use in "this action," which, as shown above, was limited to the SEC investigation of MSA. See infra.

C.   **The IRS Summons**.

Notwithstanding the presence of two Protective Orders, Dr. Gerber's transcript was shared almost immediately with at least one Justice Department attorney assisting the IRS in its own investigation of MSA affairs, and possibly the IRS. See Rosenthal Dec., para. 14-15. Based on his statements, see infra, the Justice Department Attorney Brian Bailey clearly reviewed the deposition. It is possible that the IRS Criminal Investigation Division (CID) also reviewed the deposition.

Unbeknownst to Dr. Gerber or the court in Utah, the IRS and DOJ evidently were intent on using the deposition for a purpose entirely different and distinct from the rationale given the court for allowing such discovery. The IRS and DOJ were planning on claiming that Dr. Gerber had not been defrauded and victimized by MSA, as the SEC had represented to the Court in the MSA case in Utah, but that Dr. Gerber was himself involved in a fraud on the IRS.

Beginning in 2006, the IRS issued a spate of administrative summonses for records claimed by the IRS to belong to Gerber. These summonses included the following:

- December 2, 2005 summons to Rosenau & Rosenau
- January 10, 2006 summons to Paine Webber
- January 11, 2006 summons to US Bank Corp., N.A.
- June 6, 2006 summons to Wells Fargo Bank, N.A.
- June 8, 2006 summons to Key Bank, N.A.

On January 30, 2006, Dr. Gerber moved before this Court to quash the Paine Webber and U.S. Bank summonses. In response to Dr. Gerber's petition to quash, the Government claimed, among other things, that the investigation was for a proper purpose and had not been filed in bad faith. The Government also claimed that it had complied with 26 U.S.C. § 7602, which prohibits the use of an IRS summons while a criminal referral to the Department of Justice is in effect. IRS Special Agent Ken Buck stated in his Declaration:

-6-

> As of the date of this Declaration, there is no 'Justice Department referral,' within the meaning of 26 U.S.C. § 7602(d), in effect with respect to Dr. Gerber. Specifically, the IRS has not made a recommendation to the U.S. Department of Justice for a grand jury investigation or criminal prosecution of Dr. Gerber for the tax period under examination, and the IRS is not delaying such a recommendation in order to collect additional information.

Buck Declaration, para. 11, annexed to United States Petition to Dismiss Petition to quash IRS Summons. Buck's Declaration is dated March 17, 2006.

On September 14, 2006, this Court denied Petitioner's Petition to quash the U.S. Bank summons on the ground that this Court lacked jurisdiction over the action by virtue of the location of the bank in Minneapolis. On May 29, 2007, the Court issued a second Order, dismissing the Petition to quash the U.S. Bank summons, and while refusing to dismiss the petition directed at the Paine Webber UBS. Referring to the Paine Webber summons, the Court held that the Government could refile a Petition on the merits of the matter on or before June 1, 2007.

The Government did so on June 1, 2007, and again stated:

> **At this time there is no "Justice Department referral," within the meaning of 26 U.S.C. § 7602(d), in effect with respect to Dr. Gerber.** Specifically, the IRS has not made a recommendation to the U.S. Department of Justice for a grand jury investigation or criminal prosecution of Dr. Gerber for the tax periods under examination, and the IRS is not delaying such a recommendation in order to collect additional information. Moreover, the Department of Justice has not made any request under 26 U.S.C. § 6103(h)(3)(8) for the disclosure of any return or return information, as those terms are defined in 26 U.S.C. § 6103(b), relating to Dr. Gerber (Buck decl. ¶ 11.)

Gov't Memo, para. 9 (emphasis added).

    D.    **The Government's Admission that the Justice Department Not Only Reviewed Material Covered by the Protective Order, But Regards Gerber as a "Target" of the Investigation.**

To assist him with respect to the IRS investigation, Dr. Gerber hired two attorneys, Arthur H. Boelter and Samuel Rosenthal. Rosenthal Dec., para. 10. On Friday, June 27th, Messrs.

Boelter and Rosenthal met with IRS Special Agent Matala and Department of Justice Attorney Brian Bailey. Id. At that meeting, both Agent Matala and Mr. Bailey indicated that they had read Dr. Gerber's deposition in the MSA case; this was the sole item of evidence given as a basis for believing that Dr. Gerber should be prosecuted. Id., para. 10. They added that Gerber was in fact a "target" of the investigation. Id., para. 10.

Subsequently, on July 16, 2007, Mr. Rosenthal again met with Brian Bailey and Special Agent Matala. Rosenthal Aff., para. 14. At this time, Mr. Bailey indicated that while he had read the MSA deposition given by Dr. Gerber, he had done so prior to the issuance of the Protective Order by the judge in the MSA case. Id., para. 14. Of course, the Protective Order pertaining specifically to Dr. Gerber was entered before Dr. Gerber's deposition, not afterward.[4] Mr. Bailey also indicated that he had read the deposition while being cross-designated as an Assistant U.S. Attorney in Utah several years ago. Id., para. 15. Agent Matala indicated that he had not read Dr. Gerber's MSA deposition, but had instead read the deposition of Dr. Gerber in proceedings given in his divorce action. Id., para. 16.[5]

At a minimum, such statements conflict with representations made to this Court in the Government's filing June 1, 2007 claiming that no referral had been made to the Justice Department, and second, demonstrates that a violation of the court's Protective Order in the MSA case has occurred.

---

[4] As explained above, there were in fact two Protective Orders. The first one was issued prior to Dr. Gerber's deposition, rendering it impossible for the Tax Division to have obtained the deposition transcript without violating the Protective Order. See Rosenthal Declaration.

[5] The divorce deposition dealt with different subject matter than the Utah deposition, and did not focus on Gerber's involvement with MSA.

-8-

# ARGUMENT

I. **THE GOVERNMENT HAS NO RIGHT TO USE THE ADMINISTRATIVE SUMMONS AUTHORITY WHILE A CRIMINAL REFERRAL IS IN EFFECT AND AFTER USING EVIDENCE OBTAINED IN VIOLATION OF THE COURTS' PROTECTIVE ORDER**

The Government has admitted that it has the "burden of establishing a prima facie case of enforcing the Paine Webber/UBS summons. . . ." Gov't Br. at 4, para. 15. It has also conceded that any such showing must include that the summonses have been issued for a "legitimate purpose," namely a civil purpose allowed by 26 U.S.C. § 7602. Here, the Government cannot sustain that burden.[6] First, because a criminal referral was in effect when the Government filed its Memorandum in support of the summons, and was evidently in effect when the IRS issued its summons in 2006. Thus, there has been a clear violation of the statute. Second, the investigation resulting in issuance of the summonses was apparently motivated by a review of documents obtained in violation of the court's Protective Orders in Utah.

### A. Section 7206 Prohibits the Use of the Summons in Question Once the IRS Has Referred the Matter to the Department of Justice.

The Government has conceded, as it must, that it has no right to enforce an IRS administrative summons if a criminal referral is in effect. See Gov't Memo, para. 9, 17. The statute, 26 U.S.C. § 7 602(d) provides in relevant part that no "administrative summons may issue when there is a Justice Department referral . . . ." The statute goes on to reiterate:

> No summons may be issued under this title, and the Secretary may not begin any action under section 7604 to enforce any summons, with respect to any person if a Justice Department referral is in effect with respect to such person.

Here, the Government attempted to comply with this provision by asserting in June 2007 that there is no criminal referral in effect. Any such assertion is contrary to the fact that the

---

[6] We recognize that some courts hold that upon making a prima facie showing, the burden shifts to the taxpayer to overcome that burden. Here, no such showing has been made, and in any event, is overcome by evidence of a violation of Section 7602 and the Utah Protective Orders.

Justice Department is, and has been, investigating Gerber for at least several years and has concluded that he is a target of its investigation. See Rosenthal Dec., para. 10.

Nor is it convincing for the Government to argue that "no criminal referral" within the meaning of Section 7602 has occurred because the IRS is simply conducting an administrative investigation. Any notion that the investigation was simply an administrative investigation in 2006 when the IRS summonses were issued is belied by the fact that the Justice Department was already assigning trial attorneys assigned to prosecute criminal cases on behalf of its Tax Division to the investigation around the time when Dr. Gerber was deposed or shortly thereafter. See Rosenthal Dec., para. 14-15. The IRS itself recognizes that outside agencies, such as the Department of Justice, are not involved where there is simply an administrative investigation. See IRM 9.5.1.1 (07-15-2002) ("Administrative investigations may be worked whenever the special agent anticipates working without the cooperation of other agencies").

The Government cannot avoid the obvious inconsistency between its statements to this Court and the unfolding facts by arguing that there was no "criminal referral" since the summonses were issued before the Justice Department became involved. The Government represented to this Court in June 2007 that "*[a]t this time* there is no 'Justice Department referral within the meaning of 26 U.S. C. § 7602(d), in effect with respect to Dr. Gerber. Gov't Memo, para. 9; emphasis added. The Government can hardly harmonize this statement with its representation that Gerber is likely to be indicted by claiming that "at this time" meant some time prior to January 2006, when the first summons issued. See BNA Tax Management Portfolio No.633 at B.5, opining that a summons followed by a referral is not valid and should not be enforced. Moreover, given statements by the Justice Department attorney involved in the IRS/DOJ criminal investigation, the Justice Department has been involved in this case for several years, and thus prior to 2006 when the summonses issued.

This case is therefore unlike the majority of cases involving summons enforcement actions, where the IRS has considered the possibility of criminal prosecution, but has yet to involve the Department of Justice. Whether or not some document has been issued by the IRS, formally labeled a "criminal referral," is not dispositive. The IRS cannot deny the existence of a referral when it is working with the Department as part of a wholly integrated unit that has now come to the conclusion that Dr. Gerber is a "target." The Supreme Court has made clear that referral to the Department had functional significance:

> A referral to the Justice Department permits criminal litigation to proceed. The IRS cannot try its own prosecutions. Such authority is reserved to the Department of Justice and, more particularly, to the United States Attorneys. 28 U.S.C. § 547(1). Nothing in § 7602 or its legislative history suggests the Congress intended the summons authority to broaden the Justice Department's right of criminal litigation discovery or to infringe on the role of the grand jury as a principal tool of criminal accusation. The likelihood that discovery would be broadened or the role of the grand jury infringed is substantial if post-referral use of the summons authority were permitted.

United States v. La Salle Nat'l Bank, 437 U.S. 298, 312 (U.S. 1978) (citations omitted). The Supreme Court therefore went on to warn that it would:

> not countenance delay in submitting a recommendation to the Justice Department when there is an institutional commitment to make the referral and the Service merely would like to gather additional evidence for the prosecution. Such a delay would be tantamount to the use of the summons authority after the recommendation and would permit the Government to expand its criminal discovery rights. Similarly, the good-faith standard will not permit the IRS to become an information-gathering agency for other departments, including the Department of Justice, regardless of the status of criminal cases.

Id. at 317

Here, Dr. Gerber is faced not simply with a civil and coterminus criminal investigation *by the IRS*. Rather, the Department of Justice is heavily involved, and – by its own

-11-

admission -- has been involved for years. See Rosenthal Dec., para. 14-15. While courts frequently hold that no violation of Section 7602 can be shown absent unexplained delay and/or contact between the IRS and the Department of Justice, see United States v. Henderson, 133 F.R.D. 28, 33 (D.N.C. 199) (denying the Petition to quash because there were no "particularized facts . . . [such as] an inordinate or unexpected delay in the investigation or that the IRS agents were in contact with the Department of Justice"), those very facts exist here. Where, as here, the IRS has already involved the Department of Justice, whether through some process it chooses to label as a "referral" or not, the summons authority ceases.

For instance, the situation is at least as problematic as that in United States v. Serubo, 604 F.2d 807, 813 (3d Cir. 1979), where the Circuit Court found a violation of the LaSalle Nat'l Bank rule set forth above. The court found:

> After April 23, 1975, the IRS agents were acting under the supervision of a Strike Force attorney in an ongoing criminal investigation. It therefore appears that there was a real likelihood that the IRS was used "(as) an information-gathering agency for other departments," in violation of the LaSalle standard. 437 U.S. at 317, 98 S. Ct. at 2368. With respect to the 13 subpoenas issued during this phase, individual determinations of non-criminal purpose were clearly required. The trial court did not pursue that inquiry, however, and denied further discovery as well, because he accepted Agent Watkins' representation, fortified only by the government's brief, that none of the resulting information was used by the grand jury or as a lead to any information which would be used at trial.

Id. at 813.

The Second Circuit has expressed similar doubts that no summons referral can occur after Department of Justice attorneys become involved in a criminal investigation. In United States v. Chase Manhattan Bank, 598 F.2d 321 (2nd Cir. 1979), the Court found that the District Court had erred in denying the Petition to quash an IRS summons, and had erroneously relied on bland assertions by the IRS that no bad faith existed, and that the summons was sought for a legitimate

purpose. In reversing and remanding the case, the Court took pains to point out that an attorney for the taxpayer had filed an affidavit, averring to, among other facts, a meeting with the prosecutor in charge of the case, who had informed him that both he and an FBI agent assigned to the case had concluded that the taxpayer would be indicted. Id., at 325. The Court found that the evidence offered by the taxpayer "raises the possibility of 'bad faith. . . .'" Id., at 327.

### B. The Justice Department's Denials that a Criminal Referral Has Occurred Cannot Be Given Any Weight As They Are Belied by the Evidence.

The Government has argued that it has only a "slight" burden in showing that it is acting in good faith and for a legitimate purpose. It will therefore undoubtedly claim that the Court should continue to rely on the affidavit of Agent Buck in denying the Petition to quash the summons to Paine Webber.

However, as shown above, this case presents a classic abuse of Section 7602. Based on any practical view of the role of the Justice Department in the investigation of Dr. Gerber, the matter had been referred to the Justice Department. By its own admission, the Justice Department was involved prior to the issuance of the summonses to Paine Webber and others, which occurred in 2006. Rosenthal Dec., para. 14, 15. The Justice Government obtained Dr. Gerber's transcript years prior to the issuance of the summons. Id. And based on that transcript, the Justice Department concluded that Dr. Gerber was a "target" of the investigation. Id., para. 10. Based on any practical view of what constitutes a "referral," the above facts should suffice to demonstrate a violation of Section 7602.

While such facts would be insufficient to sustain the summons in any event, the Government cannot even claim that it was brought into the matter at the request of the FBI or some other agency. Rather, it is highly significant that the only agency claiming that Dr. Gerber has

committed any offense is the IRS. Indeed, the only other agency on the scene, the Securities and Exchange Commission, properly treated Dr. Gerber as a "victim" of the MSA fraud.

Finally, this is not a case where the Court should accept the bland, perfunctory denials of impropriety in deciding whether a violation of Section 7602 has occurred. The Government's prior Memorandum in opposition to the Petition to quash does no more than recite that there has been no violation of Section 7602, and that no referral to the Department of Justice has occurred. The affidavit of IRS Special Agent Buck does no more than offer similar bland assertions, which are belied by the evidence. That is exactly what was found deficient in Serubo and Chase Manhattan Bank, supra.

## II.  THE GOVERNMENT CANNOT ISSUE SUMMONSES BASED UPON INFORMATION OBTAINED IN VIOLATION OF THE PROTECTIVE ORDERS ISSUED IN UTAH.

Even aside from the problem that the summonses were issued after a criminal referral, and therefore violate 26 U.S.C. § 7602, it is now obvious that the Government was motivated to use the administrative summons authority only after obtaining deposition testimony and documents in violation of the Protective Orders issued in Utah.

### A.  The Protective Orders Precluded Use of the Depositions Given by Gerber in Utah.

As demonstrated above, the terms of the Protective Orders issued by the District Court in Utah is clear and unequivocal: disclosure was permitted only for use in "litigating this action," which was defined as "litigation commenced by the Receiver or the Securities and Exchange Commission." Rosenthal Dec., Ex. B, para. 2. The joint IRS/DOJ investigation cannot be considered "this action" in any manner shape or form. Moreover, the Justice Department made it perfectly clear that it had obtained Dr. Gerber's deposition testimony and was using such information in connection with its IRS investigation.

Abundant authority may be found sustaining the point that the court has ample authority to prevent conduct that would interfere with the orderly administration of justice, and the integrity of court orders. United States v. National Medical Enterprises, Inc., 792 F.2d 906, 912 (9th Cir. 1986) (finding "inherent power to dismiss an action if '"a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice"), citing Fjelstad v. American Honda Co., Ltd., 762 F.2d 1334, 1338 (9th Cir. 1985), Wyle v. R.J. Reynolds Industries, Inc., 709 F.2d 585, 589 (9th Cir. 1983).

Where there is a violation, in particular, of a protective order or other rule prohibiting disclosure of information obtained by the Government, "there is a range of sanctions and remedies that may be imposed." United States v. Flemmi, 233 F.Supp.2d 75 (D. Mass. 2000). These include relief far more drastic than urged here, namely an order quashing the summonses derived from the violation of the Protective Orders. See Barry v. United States, 275 U.S. "App. D.C., 218, 865 F.2d 317, 1321(D.C. Cir. 1989) (injunctions against continuing violations); United States v. Blalick, 844 F.2d 844 F2d 1546, 1558 (11th Cir. 1988)(imprisonment for criminal contempt); and United States v. Williams, 504 U.S. 36, 46 & n.6, 118 L.Ed.2d 352, 112 S.Ct. 1735 (1992)(dismissal of an indictment).

Here, quashing the summonses would not only ensure that the Government does not profit from its earlier violation, it would assist in avoiding future use of the fruits of the Government's earlier violation.

B.  **Petitioner is Entitled, at a Minimum, to Discovery to Determine Whether the Government Can Meet Its Burden.**

Even if this Court declines to quash the summonses outright, it should at least allow Petitioner an opportunity to obtain discovery to determine the extent of any violation of either the Protective Orders or 26 U.S.C. § 7602. Such discovery serves two purposes.

First, discovery would allow the Petitioner and the Court an opportunity to assess the extent of any violation of the Protective Orders and 26 U.S.C. § 7602. In <u>Serubo</u> the court found that because Section 7602 embodied a statutory policy of confining Internal Revenue summonses to civil investigations, there should be an appropriate remedy for violations of that provision. The court found "strong evidence of a Congressional intention" to provide a remedy for violations of a Donaldson-LaSalle violation." 604 F.2d at 814. The court therefore ordered discovery to determine whether there were grounds for imposition of a remedy as a result of the misuse of administrative subpoenas in that case. 604 F.2nd at 814.

Second, as <u>Serubo</u> makes clear, discovery would also allow the Court a more complete record with which to ascertain the appropriate remedy for such violations. See <u>United States v. Flemmi</u>, 233 F.Supp. 2d at 86. In <u>Flemmi</u>, the Court found that because a *prima facie* case of misconduct had occurred, it was appropriate to order discovery that would shed light on such violations. Id.

Consequently, discovery would shed substantial light on the extent of the Government's violations of Section 7602 and the Court's Protective Orders in the MSA case, and also what remedy is appropriate for such violations.

-16-

## CONCLUSION

The Court should grant the Petition to quash the summons issued to Paine Webber. In the alternative, the Court should allow Petitioner to take discovery from the Government to determine the extent of any violations of 26 U.S.C. §7602 and the Protective Orders entered in the MSA case, as well as the appropriate remedy for such violations.

Washington, D.C.
July 30, 2007

                                    Curtis, Mallet-Prevost, Colt & Mosle, LLP
                                    1200 New Hampshire Ave., N.W.
                                    Washington, D.C. 20036
                                    (202) 452-7340
                                    srosenthal@cm-p.com

                                    By /s/ _____
                                    Samuel Rosenthal (DC Bar No. 329516)

                                    Rosenau & Rosenau
                                    Kenneth Rosenau
                                    1304 Rhode Island Ave., N.W.
                                    Washington, D.C. 20009
                                    (202) 387-8680
                                    Kenneth.Rosenau@rosenaulaw.com

                                    Counsel for Petitioner
                                    Richard Gerber