IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RICHARD GERBER,                          )
                                         )
            Petitioner,                  )
                                         )
      v.                                 )          Case No. 1:06-mc-00032-RMU
                                         )
UNITED STATES OF AMERICA,                )          Hon. Ricardo M. Urbina
                                         )
            Respondent.                  )
_____

**DECLARATION OF SAMUEL ROSENTHAL IN SUPPORT OF
PETITION TO QUASH IRS SUMMONS ISSUED TO PAINE WEBBER**

**Pursuant to 28 U.S.C. §1746(1) Samuel Rosenthal declares as follows:**

        1.      I am an attorney licensed to practice in the District of Columbia.   I have

been retained to represent Petitioner, Dr. Richard Gerber.   Except as otherwise indicated below,

this affidavit is based on my review of the filings in the litigation brought by the SEC, and the

receiver appointed by the Court, in litigation in Utah involving Merrill Scott & Associates,

Securities and Exchange Commission vs. Merrill Scott, Docket Number 2 CV 0039C (D Utah)

("the MSA case"), as well as the filings in this case.

        2.      Attached as Exhibit A is a true copy of the Complaint filed in the MSA

case.  In that complaint, the SEC alleged that clients of MSA were fraudulently induced to invest

in that entity, which provided them with "professionals include[ing] attorneys, accountants,

financial planners, asset managers and persons with banking expertise." Id., para. 21.  The

Complaint further alleged that through these professionals MSA advised clients that they could

transfer assets to MSA while still maintaining control over those assets and how they were

invested, while obtaining substantial tax savings.  According to the Government in the MSA

case, MSA actually defrauded these clients. The Complaint filed by the SEC explained that

MSA misrepresented numerous facts. It explained that:

> The misrepresentations made by the Defendants include:
>
> a. The funds of MSA investors will be held in segregated accounts and will be held in trust on behalf of the investor.
>
> b. That payments made to MSA investors are the proceeds of their own investment funds.
>
> c. That the fees disclosed to MSA investors are the only funds used by the Defendants for their own purposes.
>
> d. That even though the investor has, on paper, surrendered control of his assets to MSA, MSA investors will be able to direct the funds being held on their behalf offshore.

Id., para.40.

3.      At the request of the SEC, the court in the MSA case appointed a receiver, David Broadbent, to manage the affairs of MSA and to prosecute any claims on behalf of MSA's clients, who has been defrauded by the MSA principals. Petitioner herein, Dr. Richard Gerber, was one of the investors in MSA.

4.      In or about early 2004, the receiver indicated his intention to take the deposition of Dr. Gerber. Attached as Exhibit B is a true copy of the Protective Order entered by the Court in the MSA case, and governing any use of the deposition transcript, as well as any financial or other types of documents produced by Dr. Gerber.

5.      Following entry of the Protective Order, Dr. Gerber was deposed for a full two days on February 9 and 10, 2007.

6.      In December, 2004, a second Protective Order was issued in the MSA case, again protecting financial and other documents from being disclosed to anyone other than the SEC, receiver and those assisting them in the MSA case. A true copy of that Order is attached hereto as Exhibit C.

3800317v3

7.     When the Order initially went substantially beyond such uses, a group of clients objected on the ground that it would allow use of such materials in matters other than the SEC action..   Attached as Exhibit D is a true copy of the objections by those investors to a draft order prepared by the receiver, and which allowed documents produced by those clients to be shared with other agencies of the federal government.

8.     On December 8, 2004, the court in the MSA case entered an order striking out language that would have allowed the receiver to share documents with "any other department or agency of the federal government."   A true copy of the Court's December 8, 2004 Order is attached hereto as Exhibit E.

9.     Beginning in late 2005, the Government began issuing IRS administrative summonses to entities in connection with an investigation into Gerber's tax returns for years 1999-2005.   These summons included:

December 2, 2005 summons to counsel for Dr. Gerber, Rosenau & Rosenau.

January 10, 2006 summons to Paine Webber

January 11, 2006 summons to US Bank Corp., N.A.

June 6, 2006 summons to Wells Fargo Bank, N.A.

June 8, 2006 summons to Key Bank, N.A.

Attached as Exhibit F are true copies of the above summons.

10.     To assist him with respect to the IRS investigation, Dr. Gerber hired Curtis, Mallet-Prevost, Colt & Mosle, LLP, where I am a partner, and another attorney, Arthur H. Boelter.   On Friday, June 27th, Mr. Boelter and I met with Special Agent Matala and Department of Justice Attorney Brian Bailey.  At that meeting with both Agent Matala and Mr. Bailey, the sole item of evidence mentioned as forming a basis for believing that Dr. Gerber

3800317v3

should be prosecuted was the deposition given by Dr. Gerber in the MSA case. They added that Gerber was in fact a "target" of the criminal investigation.

11.     In this litigation, the Government has repeatedly taken the position that there had been no referral by the IRS to the Department of Justice.

12.     After Dr. Gerber initially filed a petition to quash the summons, the Government offered the Declaration of Special Agent Buck, who averred that there was no "referral" to the Department of Justice." A true copy of Agent Buck's Declaration is attached hereto as Exhibit G

13.     After this Court issued an opinion in May 29, 2007, inviting the Government to "refile a motion on the merits of the matter on or before June 1, 2007," the Government did so on June 1, 2007, and again stated:

> At this time there is no "Justice Department referral," within the meaning of 26 U.S.C. §7602(d), in effect with respect to Dr. Gerber. Specifically, the IRS has not made a recommendation to the U.S. Department of Justice for a grand jury investigation or criminal prosecution of Dr. Gerber for the tax periods under examination, and the IRS is not delaying such a recommendation in order to collect additional information. [emphasis added].

A true copy of the Government's Memorandum in Opposition to the Motion to Quash the Summons is attached hereto as Exhibit H.

14.     Subsequently, on July 16, 2007, I again met with Brian Bailey and Special Agent Matala. At this time, Mr. Bailey indicated that while he had read the MSA deposition given by Dr. Gerber, he had done so prior to the issuance of the Protective Order by the judge in the MSA case. Mr. Bailey made no mention of the fact that the initial Protective Order had been issued prior to Dr. Gerber's deposition, and was presumably referring to the second Protective Order, issued in December, 2004.

3800317v3

15.     Mr. Bailey further indicated that he had read the deposition several years ago while being cross-designated as an Assistant U.S. Attorney in Utah.

16.     At the meeting on July 16, 2007, Agent Matala indicated that he had not read Dr. Gerber's MSA deposition, but had instead read the deposition of Dr. Gerber in proceedings given in his divorce action.

17.  I declare under penalty of perjury that the foregoing is true and correct.

Samuel Rosenthal

3800317v3