IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RICHARD GERBER, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 1:06-mc-00032-RMU |
| ) | Case No. 1:05-mc-00516-RMU |
| UNITED STATES OF AMERICA, ) | |
| ) | Hon. Ricardo M. Urbina |
| Respondent. ) | |

**UNITED STATES' RESPONSE TO MOTION OF PETITIONER
RICHARD GERBER FOR AN ORDER REQUIRING THE
GOVERNMENT TO RETURN ALL MATERIALS OBTAINED
PURSUANT TO SUMMONSES ISSUED TO PAINE WEBBER
AND ROSENAU & ROSENAU AND FOR ATTORNEYS
<u>FEES PURSUANT TO 26 U.S.C. SECTION 7430</u>**

The United States responds to the Motion of Petitioner Richard Gerber for an Order Requiring the Government to Return All Materials Obtained Pursuant to Summonses Issued to Paine Webber and Rosenau & Rosenau and for Attorneys Fees Pursuant to 26 U.S.C. Section 7430, and Gerber's accompanying Memorandum of Points and Authorities ("Gerber Memo"), filed August 15, 2007 (docket No. 16). As our prior submissions respecting the Paine Webber/UBS summons (Case No. 1:06-mc-00032-RMU) and the Rosenau & Rosenau summons (Case No. 1:05-mc-00516-RMU) set forth the history of these proceedings in detail, we do not burden the Court with another recitation of the background. Rather, we address the pertinent facts below in the context of Gerber's present allegations.

2662330.1

### A. The Paine Webber/UBS Summons (Case No. 1:06-mc-00032-RMU).

On January 10, 2006, in furtherance of an investigation of Gerber and taxable income he received during the tax years 1999, 2000, 2001, 2002, 2003, 2004, and 2005, and in accordance with 26 U.S.C. § 7602, the Internal Revenue Service ("IRS" or "Service") issued an administrative summons, IRS Form 2039, to Paine Webber (a/k/a UBS), 100 East Pratt Street, 21st Floor, Baltimore, Maryland 21202, for records and documents (the "Paine Webber/UBS summons").[1]

Gerber filed a Petition to Quash the Paine Webber/UBS summons on January 30, 2006 (docket No. 1). The United States filed a motion to dismiss the Petition to Quash the Paine Webber/UBS summons for lack of subject matter jurisdiction on April 3, 2006 (docket No. 6). By Memorandum Order entered May 29, 2007 (docket No. 9), the Court denied the United States' motion to dismiss the Petition to Quash for lack of subject matter jurisdiction, but directed that the United States "may refile a motion on the merits of the matter on or before June 1, 2007." (Memorandum Order 3.) The United States filed its renewed motion to dismiss Dr. Gerber's Petition to Quash the Paine Webber/UBS summons on June 1, 2007 (docket No. 10). On July 31, 2007, Gerber filed his Supplemental Memorandum in Support of Petition to Quash IRS Summons, or in

---

[1] The background facts described above are established by the Memorandum in Support of United States' Motion to Dismiss Petition to Quash IRS Summons, filed June 1, 2007 (docket No. 10, Case No. 1:06-mc-00032-RMU) ("US Memo"), and the attachments submitted therewith. Gerber submitted a copy of the Paine Webber/UBS summons as Exhibit F to the Declaration of Samuel Rosenthal, filed July 31, 2007 (docket No. 12, Case No. 1:06-mc-00032-RMU). (Rosenthal Decl. ¶ 9.)

the Alternative, to Request Discovery (docket No. 12) ("Gerber Supp.").

By letter dated August 8, 2007, the Service notified UBS (f/k/a Paine Webber) that the Service had withdrawn the January 10, 2006 summons in its entirety. On August 9, 2007 (docket No. 15), the United States notified the Court that the Service had withdrawn the Paine Webber/UBS summons, and asked the Court to dismiss Gerber's Petition to Quash as moot.

Gerber asks the Court to order the Service to return all documents produced by Paine Webber/UBS "to the extent that Paine Webber has complied with the summons issued to it." (Gerber Memo 6.) In light of Gerber's Petition to Quash the summons, pending since January 30, 2006, Paine Webber/UBS never produced any documents to the Service in response to the summons.

"A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Gerber v. United States*, Case No. 1:05-mc-00516-RMU, Memorandum Order filed September 14, 2006, at 1 (internal quotation omitted). As the Service has withdrawn the Paine Webber/UBS summons, the Court cannot quash the summons. Because Paine Webber/UBS produced no documents in response to the summons, there are no documents the Court can order the Service to return. There being no case or controversy for the Court to adjudicate, nor any practical relief the Court may order, the Court should dismiss Case No. 1:06-mc-00032-RMU, respecting the Paine Webber/UBS summons, as moot.

**B.     The Rosenau & Rosenau Summons
        (Case No. 1:05-mc-00516-RMU).**

On December 2, 2005, in furtherance of the above referenced investigation of Gerber and taxable income he received during the tax years 1999, 2000, 2001, 2002, 2003, 2004, and 2005, and in accordance with 26 U.S.C. § 7602, the Service issued an administrative summons, IRS Form 2039, to Rosenau & Rosenau, 1304 Rhode Island Avenue, N.W., Washington, D.C. 20005, for records and documents (the "Rosenau & Rosenau summons").[2]

Gerber filed a Petition to Quash the Rosenau & Rosenau summons on December 20, 2005 (docket No. 1).  On April 3, 2006 (docket No. 8), the United States asked the Court to dismiss the Petition to Quash and counterclaimed for enforcement of the summons.  After the matter was fully briefed, Gerber voluntarily abandoned his opposition to the Rosenau & Rosenau summons.  Presumably at Gerber's behest, Rosenau & Rosenau voluntarily complied with the summons in early August of 2006, and produced the requested documents to the Service.  On August 24, 2006 (docket No. 11), the United States notified the Court that Rosenau & Rosenau had complied with the summons, and that proceedings on the summons were therefore moot.

The Court agreed.  By Memorandum Order dated September 14, 2006 (docket No. 12), the Court held that "the proceedings with respect to Rosenau & Rosenau are

---

[2] The background facts described above are established by the United States' Response to Petition to Quash IRS Summons and Counterclaim for Enforcement of Summons, filed April 3, 2006 (docket No. 8, Case No. 1:05-mc-00516-RMU), and the attachments submitted therewith.

moot" and granted the United States' motion to dismiss Gerber's Petition to Quash the Rosenau & Rosenau summons. (Memorandum Order 1, 3.)

As it completely terminated the proceedings on the Rosenau & Rosenau summons, the September 14, 2006 Memorandum Order became a final and appealable judgment of dismissal on February 12, 2007. *See* Fed. R. Civ. P. 58(b)(2)(B) (providing that judgment is entered "when 150 days have run from entry in the civil docket"); Advisory Committee Note to 2002 amendment to Rule 58, 207 F.R.D. 50, 79-81 (Dec. 1, 2002) (explaining that 150-day rule was enacted to eliminate uncertainty as to date on which judgment is effective and from which time to appeal runs); Wright, Miller & Kane, 11 *Federal Practice & Procedure* Civ.2d § 2785 (2007).[3]

The time for Gerber to file a notice of appeal from the September 14, 2006 Memorandum Order expired on April 13, 2007. Fed. R. App. P. 4(a)(1)(B) (providing 60 days for filing notice of appeal where United States is party). Gerber filed no notice of appeal. Consequently, the September 14, 2006 Memorandum Order is res judicata as to the Rosenau & Rosenau summons.

---

[3] *See also* Advisory Committee Note to 2002 Amendment to Fed. R. App. P. 4(a)(7), 207 F.R.D. 655, 687-88 (Dec. 1, 2002) (discussing corresponding amendment to Fed. R. App. P. 4(a)(7), defining date from which time to appeal runs). The United States acknowledges that the Clerk has not formally entered a judgment on the docket in Case No. 1:05-mc-00516-RMU, pursuant to Fed. R. Civ. P. 58(a)(2)(A). This is precisely the situation that the 2002 amendments to Fed. R. Civ. P. 58 and Fed. R. App. P. 4(a)(7), adding the 150-day default rule, are intended to address.

### C. Gerber Is Not Entitled to Rule 60(b)(2) Relief from the September 14, 2006 Memorandum Order Respecting the Rosenau & Rosenau Summons.

Gerber contends that he is entitled to relief from the September 14, 2006 Memorandum Order under Fed. R. Civ. P. 60(b)(2), which allows a court to relieve a party from a final judgment, order, or proceeding where the party presents "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." (Gerber Memo 7.)  Specifically, Gerber seeks an order directing the Service to return the documents that Rosenau & Rosenau voluntarily produced in response to the summons. (*Id*. at 6.)  Gerber's "newly discovered evidence" theory lacks merit.

Gerber's claim that the Rosenau & Rosenau and Paine Webber/UBS summonses, both now moot, were invalid when issued because the Service has made an undisclosed "Justice Department referral," within the meaning of 26 U.S.C. § 7602(d)(2), is rank conjecture and beside the point in any event. (Gerber Supp. 7-14.)  Gerber bases this claim on certain matters allegedly discussed during a meeting on Friday, June 22, 2007, attended by Gerber's attorneys, Arthur Boelter and Samuel Rosenthal, IRS Special Agent John Matala, and Brian Bailey, an attorney employed by the Tax Division of the Department of Justice, and a second meeting attended by Rosenthal, Matala, and Bailey on July 16, 2007. (Gerber Supp. 8; Rosenthal Decl. ¶¶ 10-16.)[4]  Gerber neglects to inform

---

[4] Rosenthal claims the meeting took place on Friday, June 27, 2007. (Rosenthal Decl. ¶ 10.)  The calendar reflects that June 27, in fact, fell on a Wednesday.

the Court, however, that Boelter and Rosenthal, on Gerber's behalf, *requested* both meetings with Bailey. Having asked for two meetings with a Justice Department attorney, and gotten what he asked for, Gerber cannot point to those meetings – and, to be clear, that is all he points to – as "evidence" of a supposed "Justice Department referral" under 26 U.S.C. § 7602(d)(2).

Moreover, even assuming Gerber had any plausible evidence that the Service had referred the Gerber investigation to the Justice Department in June 2007 (and he does *not*), a criminal referral to the Justice Department *after* the Service has issued a summons does not retroactively invalidate the summons. *Drum v. United States*, 602 F.Supp. 834, 836-37 (M.D. Pa. 1985); *United States v. Taylor*, 2007 WL 805662, *7-8 (D. Ariz. May 14, 2007); *United States v. Henderson*, 133 F.R.D. 28, 32-33 (M.D.N.C. 1990); *Garpeg Ltd. v. United States*, 583 F.Supp. 799, 802 (S.D.N.Y. 1984) ("It is well settled . . . that the validity of an IRS summons is tested as of the date of issuance.") (collecting cases). Here, the Service issued the Rosenau & Rosenau and Paine Webber/UBS summonses *18 months* before the two meetings that, in Gerber's mistaken view, signify the existence of a Justice Department referral. Gerber's attempt to stretch hindsight beyond all limits is not "newly discovered evidence" under Rule 60(b)(2).

Gerber also contends that Bailey read a deposition given by Gerber in in *SEC v. Merrill Scott & Associates, Ltd.*, et al., Civil No. 2:02cv0039 (D. Utah), a receivership action brought by the Securities and Exchange Commission ("SEC") against Merrill Scott & Associates, Ltd. ("MSA") in January 2002 (the "MSA

Receivership"), and that Bailey, in doing so, violated one or more protective orders issued by the United States District Court for the District of Utah. (Gerber Supp. 4-5, 8-9; Gerber Memo 2.) But Gerber has presented no credible evidence suggesting any violation of a protective order entered by the Utah district court.

The first protective order at issue was entered by the Utah district court in the MSA Receivership on or about February 2, 2004 (the "February 2, 2004 Protective Order"). (Rosenthal Decl. ¶ 4, Ex. B.) The February 2, 2004 Protective Order bars the disclosure of personal financial information produced by Gerber in the MSA Receivership. (*Id.* at Ex. B, ¶ 1-2.) But the February 2, 2004 Protective Order expressly permits the disclosure of financial information produced by Gerber to the United States Attorney's Office for the District of Utah. (*Id.* at ¶ 3(f).)

The second protective order at issue was entered by the Utah district court in the MSA Receivership on or about December 8, 2004 (the "December 8, 2004 Protective Order"). (Rosenthal Decl. ¶ 6, Ex. C.) On December 8, 2004, Gerber and other MSA investors filed an objection to the December 8, 2004 Protective Order. (Declaration of Richard G. Jacobus, dated March 20, 2006, and filed on April 3, 2006 (docket No. 6, Case No. 1:06-mc-00032-RMU), at ¶ 4, Ex. 2.[5] As originally entered, the December 8, 2004 Protective Order allowed the SEC and the court-appointed receiver in the MSA Receivership to disclose personal financial information of Gerber and other MSA

---

[5] The United States physically filed the original Jacobus Declaration with the Court on April 3, 2006 (docket No. 6), and electronically filed a copy of the Jacobus Declaration on June 1, 2007 (docket No. 10).

investors to "the United States Attorney's Office for the District of Utah or any other department or agency of the federal government." (Rosenthal Decl. Ex. C, ¶ 6(f).) At the request of Gerber and the other MSA investors, the Utah district court entered another order on December 21, 2004, amending the December 8, 2004 protective order to limit any disclosure of such information to the United States Attorney's Office for the District of Utah. (Jacobus Decl. at Ex. 3, page 2; Rosenthal Decl. Ex. E.)

Gerber urges that Bailey, during the July 16, 2007 meeting with Rosenthal and Agent Matala, "indicated that he had read the deposition several years ago while being cross-designated as an Assistant U.S. Attorney in Utah." (Rosenthal Decl. ¶ 15.) Both of the protective orders entered by the Utah district court permit disclosure to the United States Attorney's Office for the District of Utah. Taking Gerber and his counsel at their word, Bailey was detailed to the United States Attorney's Office for the District of Utah as an Assistant U.S. Attorney when he read Gerber's MSA deposition. Thus, the disclosure of Gerber's MSA deposition to Bailey fell squarely within the terms of the Utah district court's protective orders.

Further, even assuming that any violation of the Utah district court's protective order(s) had occurred, Gerber's exclusive remedy is to petition the *Utah* court for relief, not ask *this* Court to invalidate the Rosenau & Rosenau and Paine Webber/UBS summonses (both of which are moot in any event), much less confer a windfall on Gerber by awarding him attorney's fees. Notably, the docket sheet in the MSA Receivership reflects that Gerber has taken no action to bring the United States' alleged

9

2662330.1

"violations" of the MSA protective orders to the attention of the U.S. District Court for the District of Utah.[6]

Because Gerber has presented no "newly discovered evidence" that bears on the validity (or mootness) of the Rosenau & Rosenau and Paine Webber/UBS summonses, the Court should deny Gerber's request for relief from the September 14, 2006 Memorandum Order pursuant to Fed. R. Civ. P. 60(b)(2).

### D. Gerber Is Not Entitled to Rule 60(b)(3) Relief from the September 14, 2006 Memorandum Order Respecting the Rosenau & Rosenau Summons.

Gerber alternatively contends that he is entitled to relief from the September 14, 2006 Memorandum Order under Fed. R. Civ. P. 60(b)(3), which allows a court to relieve a party from a final judgment, order, or proceeding where the party presents evidence of "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." (Gerber Memo 7.) It is "well-settled that a litigant seeking relief from a judgment under Federal Rule of Civil Procedure 60(b)(3) based on allegations of fraud upon the court must prove the fraud by clear and convincing evidence." *Shepherd v. American Broadcasting Companies, Inc.*, 62 F.3d 1469, 1477 (D.C. Cir. 1995). For the reasons given above, Gerber has presented no evidence even remotely suggesting any "fraud" on the part of the United States in this matter, let

---

[6] As of August 21, 2007, the docket sheet in the MSA Receivership, Civil No. 2:02cv0039, available to the public at **http://ecf.utd.uscourts.gov**, reveals no filing by Gerber relating to the claimed "violations" of the Utah protective orders. The United States respectfully asks this Court to take judicial notice of this fact.

alone any proof rising to the level of clear and convincing evidence. Accordingly, the Court should deny Gerber's request for relief from the September 14, 2006 Memorandum Order pursuant to Fed. R. Civ. P. 60(b)(3).

      E.    **Gerber's Bare Demand for Attorney's Fees, Without More, Presents No Justiciable Case or Controversy.**

As shown above, Gerber's Petition to Quash the Paine Webber/UBS summons, Case No. 1:05-mc-00516-RMU, is moot because the IRS has withdrawn the summons and it received no documents from Paine Webber/UBS that can be returned. The Rosenau & Rosenau summons is likewise moot, as the Court held when it dismissed Case No. 1:06-mc-00032-RMU on September 14, 2006. Because the September 14, 2006 Memorandum Order is res judicata, and Gerber has not shown that he is entitled to relief under Fed. R. Civ. P. 60(b)(2) or (b)(3), the only matter remaining before the Court is Gerber's demand for attorney's fees.

Gerber's "interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 480 (1990); *see also Diamond v. Charles*, 476 U.S. 54, 70-71 (1986); *Spirit of the Sage Council v. Norton*, 411 F.3d 225, 230 (D.C. Cir. 2005); *Liu v. I.N.S.*, 274 F.3d 533, 536 (D.C. Cir. 2001); *New York State Federation of Taxi Drivers, Inc. v. Westchester County Taxi and Limousine Comm'n*, 272 F.3d 154, 159 (2d Cir. 2001). As Gerber's bare demand for attorney's fees, without more, presents no justiciable case or controversy, the Court should deny such relief and dismiss Gerber's Petition to Quash the Paine Webber/UBS summons as moot.

### F. As to the Rosenau & Rosenau Summons, Gerber's Demand for Attorney's Fees Is Untimely.

Gerber seeks an award of attorney's fees under 26 U.S.C. § 7430. Section 2412(d)(1)(B) of the Equal Access to Justice Act ("EAJA") requires a party seeking an award of attorney's fees to file an application for such relief within thirty days of final judgment in the action. 28 U.S.C. § 2412(d)(1)(B); *see also* 26 U.S.C. § 7430(c)(4)(A)(ii) (incorporating 28 U.S.C. § 2412(d)(1)(B) timeliness requirement); *Collins Music Co., Inc. v. United States*, 890 F.Supp. 465, 467 (D.S.C. 1995).

As explained above, in Case No. 1:05-mc-00516, respecting the Rosenau & Rosenau summons, the September 14, 2006 Memorandum Order became a final judgment on February 12, 2007. Gerber filed no application for an award of attorney's fees within 30 days after February 12, 2007. Because Gerber's demand for attorney's fees is untimely, the Court should reject it.

### G. Gerber Is Not a Prevailing Party under Section 7430.

To obtain an award of attorney's fees under 26 U.S.C. § 7430, Gerber must be a "prevailing party" within the meaning of § 7430(a). In *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598 (2001), the Supreme Court instructed:

> Numerous federal statutes allow courts to award attorney's fees and costs to the "prevailing party." The question presented here is whether this term includes a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct. We hold that it does not.

*Buckhannon*, 532 U.S. at 600.

*Buckhannon* thus instructs that Gerber is not a prevailing party. In *Buckhannon*, the plaintiff brought suit against the State of West Virginia, two of its agencies, and certain individuals seeking declaratory and injunctive relief under the Fair Housing Amendments Act of 1988 ("FHAA"), 102 Stat. 1619, 42 U.S.C. § 3601 *et seq.*, and the Americans with Disabilities Act of 1990 ("ADA"), 104 Stat. 327, 42 U.S.C. § 12101 *et seq*. *Buckhannon*, 532 U.S. at 600-01. After the suit was instituted, the West Virginia Legislature enacted two bills that mooted the plaintiff's claim, whereupon the district court dismissed the suit. *Id*. at 601. On the theory that it was a "prevailing party" under the FHAA, 42 U.S.C. § 3613(c)(2), and the ADA, 42 U.S.C. § 12205, the plaintiff requested an award of attorney's fees. *Buckhannon*, 532 U.S. at 601.

Rejecting the idea that a plaintiff can somehow "prevail" in litigation when the defendant voluntarily alters its conduct and moots the case, the Supreme Court held that a litigant is not a "prevailing party" unless it obtains "judicial relief." *Buckhannon*, 532 U.S. at 606. In other words, the "Court held that the litigant was not a 'prevailing party,' because the lawsuit was resolved by virtue of what the defendant did, not what the court ordered." *Thomas v. National Science Foundation*, 330 F.3d 486, 492 (D.C. Cir. 2003) (following *Buckhannon* and rejecting plaintiff's claim that it was prevailing party where intervening legislation mooted lawsuit).

As he has obtained no judicial relief respecting the disputed IRS summonses, Gerber is not a "prevailing party" under 26 U.S.C. § 7430(a). Gerber's Petition to Quash

the Paine Webber/UBS summons is moot because the IRS voluntarily withdrew the summons and it has received no documents from Paine Webber/UBS that can be returned. The Rosenau & Rosenau summons is moot because Rosenau & Rosenau, at Gerber's behest, voluntarily complied with the summons. Due to these voluntary acts, there has been no "***court-ordered change*** in the legal relationship between" Gerber and the United States. *Buckhannon*, 532 U.S. at 604 (emphasis added) (internal quotation omitted); *see also Thomas*, 330 F.3d at 492-94. With that in mind, the Court should reject Gerber's contention that he is a "prevailing party" entitled to attorney's fees under 26 U.S.C. § 7430(a).[7]

### H. The United States' Positions Were Substantially Justified.

Even assuming that Gerber had obtained any judicial relief meeting the *Buckhannon* standard, he still would not be a prevailing party entitled to attorney's fees under 26 U.S.C. § 7430. Gerber cannot be a prevailing party because the United States' positions regarding the disputed IRS summonses were substantially justified, within the meaning of 26 U.S.C. § 7430(c)(4)(B).

Establishing that the United States' litigating positions were substantially

---

[7] There is no question that the holding in *Buckhannon* encompasses the definition of a "prevailing party" under 26 U.S.C. § 7430(a). Citing multiple examples of other Federal statutes that award attorney's fees to a "prevailing party," the Supreme Court emphasized that it "interpret[s] these fee-shifting provisions consistently." *Buckhannon*, 532 U.S. at 602-03 & n.4; *see also Thomas*, 330 F.3d at 492-94 (noting *Buckhannon*'s breadth and applying its holding to attorney fee demand under EAJA, 28 U.S.C. § 2412(a)(1)); *New York State Federation of Taxi Drivers*, 272 F.3d at 158 (same as to party seeking attorney fees under 42 U.S.C. § 1988).

justified is not a high burden. The United States need only show that its litigating positions were "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *see also Trahan v. Regan*, 724 F.Supp. 1005 (D.D.C. 1989). That test is met here.

○ As to the validity of the Rosenau & Rosenau and Paine Webber/UBS summonses, the United States demonstrated that the four factors under *United States v. Powell*, 379 U.S. 48, 57-58 (1964), were satisfied. Gerber raised no credible opposition to this showing.[8]

○ Although the Court denied the United States' motion to dismiss Gerber's Petition to Quash the Paine Webber/UBS summons for lack of jurisdiction, the United States' position rested on substantial authority, including appellate precedents, contradicting this Court's view.[9] In fact, the Court agreed with the United States' jurisdictional position, as regards a third IRS summons issued to US Bank, a

---

[8] *See* United States' Response to Petition to Quash IRS Summons and Counterclaim for Enforcement of Summons, filed April 3, 2006 (docket No. 8, Case No. 1:05-mc-00516-RMU), at ¶¶ 18-20 and attachments cited therein; Memorandum in Support of United States' Motion to Dismiss Petition to Quash IRS Summons, filed June 1, 2007 (docket No. 10, Case No. 1:06-mc-00032-RMU), at ¶¶ 14-16 and attachments cited therein.

[9] *See* Memorandum Order filed May 29, 2007 (docket No. 9, Case No. 1:06-mc-00032-RMU), at 1-2; Memorandum in Support of United States' Motion to Dismiss Petition to Quash IRS Summons and Petitioner's Supplemental Memorandum of Points and Authorities, filed April 3, 2006 (docket No. 6, Case No. 1:06-mc-00032-RMU), at ¶¶ 16-23. The Court denied the United States' motion to dismiss because Gerber alleged that UBS (f/k/a Paine Webber) has an office in the District of Columbia. To this day, the record in Case No. 1:06-mc-00032-RMU reflects no allegation by Gerber, let alone any evidence, suggesting the actual street address of that UBS office.

financial institution in Minneapolis, Minnesota, and dismissed Gerber's Petition to Quash the US Bank summons for lack of jurisdiction.[10] Conceding the reasonableness of the United States' jurisdictional position, Gerber now seeks no relief as to the US Bank summons. (Gerber Memo 4 n.1)

o Gerber cannot claim the United States' position regarding the Rosenau & Rosenau summons was not substantially justified. As shown above, at Gerber's behest, Rosenau & Rosenau voluntarily complied with the summons after the matter was fully briefed, but before the Court could enforce the summons.

The above circumstances show that the United States, throughout this litigation with Gerber over the disputed summonses, consistently asserted positions that were reasonable and, thus, substantially justified under 26 U.S.C. § 7430(c)(4)(B). Therefore, the Court should deny Gerber's demand for attorney's fees.

### I. Gerber Has Not Shown that he Meets the Net Worth Requirement under 26 U.S.C. § 7430(c)(4)(A)(ii).

Gerber does not allege, let alone establish, that he meets the net worth requirement for an award of attorney's fees under 26 U.S.C. § 7430(c)(4)(A)(ii), incorporating 28 U.S.C. § 2412(d)(2)(B). No attorney's fees may be awarded unless Gerber shows that his "net worth did not exceed $2,000,000 at the time the civil action was filed." 28 U.S.C. § 2412(d)(2)(B); *See Scarborough v. Principi*, 541 U.S. 401, 408 (2004)

---

[10] *See* Memorandum Order filed May 29, 2007 (docket No. 9, Case No. 1:06-mc-00032-RMU), at 3; Memorandum Order filed September 14, 2006 (docket No. 12, Case No. 1:05-mc-00516-RMU), at 2.

(noting that party's application for attorney's fees under § 2412(d)(1)(A) must include a showing that the $2,000,000 net worth requirement is met). As Gerber has not met the net worth requirement, the Court should deny Gerber's demand for attorney's fees.[11]

**J.    Gerber Has Not Met His Burden of Showing that His Demand for Attorney's Fees is Reasonable.**

To obtain an award of attorney's fees (assuming he could overcome the legal obstacles discussed above), Gerber must meet his burden of showing that the fees are reasonable. *See Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) ("Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission."); *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980); *Philipp v. ANR Freight System, Inc.*, 61 F. 3d 669, 675 (8th Cir. 1995). As Gerber has provided no information whatsoever about the attorney's fees that he seeks, the Court should deny the requested fee award.

**K.    Gerber Is Not Entitled to Discovery as to the Moot IRS Summonses, Nor to Shore Up His Demand for Attorney's Fees.**

It is well settled that "summons enforcement proceedings should be summary in nature and discovery should be limited." *United States v. Stuart*, 489 U.S. 353, 369 (1989); *see also Mazurek v. United States*, 271 F.3d 226 (5th Cir. 2001) ("[A]s noted by the

---

[11] Gerber's apparent reluctance to disclose personal financial information to the Court – and the IRS – bears kinship with Gerber's opposition to the disputed IRS summonses, which sought much the same information.

Supreme Court, allowing full opportunities for discovery would contravene the purpose of a summons enforcement proceeding, which is summary in nature."); *United States v. Rockwell Int'l*, 897 F.2d 1255, 1261 (3d Cir. 1990); *United States v. White*, 853 F.2d 107, 111 (2d Cir. 1988) ("Summons enforcement proceedings are intended to be summary in nature so that an investigation can advance to an ultimate determination [by the Service] as to whether a tax liability exists.").

Before the Court may consider whether Gerber may conduct discovery as to the disputed IRS summonses, Gerber must first demonstrate that extraordinary circumstances are present. *United States v. Judicial Watch, Inc.*, 371 F.3d 824, 830-831 (D.C. Cir. 2004). Gerber may not seek discovery because he has made no substantial preliminary showing of bad faith or abuse of process by the United States. *See Conner v. United States*, 434 F.3d 676, 682 (4th Cir. 2006) ("The case law is clear that prehearing discovery in summons enforcement proceedings is only granted where the taxpayer has made a preliminary demonstration of abuse of process . . . .").[12]

---

[12] ; *See also United States v. Gel Spice Co.*, 773 F.2d 427, 434 (2d Cir. 1985) ("With regard to both the evidentiary hearing and discovery of the documents, we have held that the burden is on defendants to make a substantial preliminary showing of bad faith before an evidentiary hearing or even limited discovery is to be held."); *Tax Liabilities of John Does v. United States*, 866 F.2d 1015, 1019 (8th Cir.1989) ("The taxpayer must make a substantial preliminary showing of abuse of the court's process before even limited discovery need be ordered . . . ."); *United States v. Markwood*, 48 F.3d 969, 982-83 (6th Cir. 1995) ("[T]here is no unqualified right to pretrial discovery in a summons enforcement proceeding. To impose such a right would often destroy the summary nature of such a proceeding. Rather, the use of discovery devices in summons enforcement proceedings should be limited to those cases where a taxpayer makes a preliminary and substantial demonstration of abuse.").

No extraordinary circumstances are present. The contested IRS summonses are now moot. The only conceivable reason that Gerber wants discovery is to shore up his demand for attorney's fees. *Pacific Fisheries Inc. v. United States*, 484 F.3d 1103 (9th Cir. 2007), a case on which Gerber erroneously relies, is instructive. In *Pacific Fisheries*, as here, the IRS withdrew the contested summonses, mooting the taxpayers' petitions to quash the summonses. Like Gerber, the taxpayers in *Pacific Fisheries* nevertheless requested discovery and attorney's fees in the district court, which denied those requests. Affirming the district court's rulings, the Ninth Circuit stated:

> The taxpayers also argue that the district court should have permitted them discovery to shore up their claim that the IRS was unreasonable, to support their claim for conditions, and to provide a basis for the district court to impose sanctions. . . . The district court did not abuse its discretion in denying the taxpayers' requests, since the purpose of discovery is to aid a party in the preparation of its case, not to punish its opponents for past sins.

*Pacific Fisheries*, 484 F.3d 1103, 1111 (9th Cir. 2007). On like reasoning, this Court should not allow Gerber any discovery regarding as to the moot IRS summonses, or to shore up his demand for attorney's fees.

\\
\\
\\
\\
\\
\\

## CONCLUSION

For the reasons set forth above, the United States respectfully asks the Court to deny the Motion of Petitioner Richard Gerber for an Order Requiring the Government to Return All Materials Obtained Pursuant to Summonses Issued to Paine Webber and Rosenau & Rosenau and for Attorneys Fees Pursuant to 26 U.S.C. Section 7430, and dismiss Gerber's Petition to Quash the Paine Webber/UBS summons as moot.

DATE:  August 22, 2007.

                Respectfully submitted,

               /s/ Richard G. Jacobus
               RICHARD G. JACOBUS
               D.C. Bar No. 462053
               Trial Attorney, Tax Division
               U. S. Department of Justice
               Post Office Box 227
               Ben Franklin Station
               Washington, DC  20044
               Telephone:  (202) 616-0553
               Richard.G.Jacobus@usdoj.gov
               Counsel for the United States

Of counsel:

JEFFREY A. TAYLOR
United States Attorney