IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RICHARD GERBER,                    )
                                   )
             Petitioner,           )
                                   )
      v.                           )      Case No. 1:06-mc-00032-RMU
                                   )      Case no. 1:05MS00516
                                   )
UNITED STATES OF AMERICA,          )      Hon. Ricardo M. Urbina
                                   )
             Respondent.           )
_____

**MEMORANDUM OF POINTS AND AUTHORITIES OF RICHARD GERBER IN OPPOSITION TO THE UNITED STATES' SUPPLEMENTAL RESPONSE TO MOTION OF PETITIONER RICHARD GERBER FOR AN ORDER REQUIRING THE GOVERNMENT TO RETURN ALL MATERIALS OBTAINED PURSUANT TO SUMMONSES ISSUED TO PAINE WEBBER AND ROSENAU & ROSENAU AND FOR ATTORNEYS FEES PURSUANT TO 26 U.S.C. SECTION 7430.**

Curtis, Mallet-Prevost, Colt & Mosle, LLP
1200 New Hampshire Ave., N.W.
Washington, D.C.  20036
Samuel Rosenthal (DC Bar No. 329516)
srosenthal@cm-p.com
(202) 452-7340

Rosenau & Rosenau
1304 Rhode Island Ave., N.W.
Washington, D.C.  20009
(202) 387-8680
Kenneth.Rosenau@rosenaulaw.com

Counsel for Petitioner
Richard Gerber

Petitioner Richard Gerber ("Gerber"), by counsel, respectfully submits this Memorandum of Points and Authorities in opposition to the United States' Supplemental Response to Motion of Petitioner Richard Gerber For an Order Requiring the Government to Return All Materials Obtained Pursuant to Summonses Issued to Paine Webber and Rosenau & Rosenau and For Attorneys Fees Pursuant to 26 U.S.C. Section 7430 ("Government Supp Response").

The Government now asks this Court to deny Gerber all relief based on a ruling issued by the Court in Utah. As this Court will recall, Gerber demonstrated in this action that the IRS, inter alia, violated the terms of protective orders issued by the Court in Utah (intended to protect Gerber an d others) by obtaining material and then issuing IRS administrative summonses in an IRS investigation of Gerber's tax returns. See, e.g., Motion of Petition er Richard Gerber for an Order Requiring the Government to Return All Materials Obtained Pursuant to Summonses Issued to Paine Webber and Rosenau & Rosenau and for Attorneys Fees Pursuant to 26 U.S.C. Section 7340, filed 8/15/07. Immediately after that motion was filed, the Government promptly notified this Court that it was withdrawing all such summonses, and then moved the Court in Utah to modify those orders issued in litigation filed by the SEC against Merrill Scott & Associates.

Following a request by the Government in the District of Utah to modify the protective orders in question, the Magistrate in the MSA case issued an order requiring the Government to submit to discovery after noting that the "court is troubled by the lack of information" explaining the Government's conduct. See Supp. Memorandum of Richard Gerber in Support of Motion to Quash IRS Summons, Ex. A at 3.

The Government objected to that ruling. The District Court in Utah has now issued a ruling on January 30, 2008 vacating the Magistrate's Order granting discovery, and also, vacating a December 21, 2004 Order, which had expressly prohibited disclosure of information to the IRS.

Even assuming arguendo that the recent order in Utah can withstand appeal,[1] we take strong issue with any notion that the ruling in Utah could be construed as requiring the relief sought by the Government in the proceedings before this Court.  Having withdrawn the summonses at issue before this Court, the Government has no legal basis for claiming that it had some right to use those summonses as a basis for seeking to compel disclosure of documents purportedly relating to an IRS investigation of Gerber.  The Government has no right to claim – as it does – that its withdrawal of the summonses "mooted" this controversy – but that it has some right to continue holding any documents obtained as a result of those now withdrawn summonses.  Nothing in the MSA litigation suggests otherwise.

Indeed, while claiming that this action is governed by the ruling in Utah, the Government neglects to inform this Court of the following colloquy between counsel for Gerber and the Court in Utah:

> MR. ROSENTHAL:  Your Honor, there's another proceeding in Washington, D.C., in Federal District Court there, and I take it nothing Your Honor is ruling here is intended to impact on that proceeding and that's up to that judge handling that case.
>
> THE COURT:  Absolutely, Absolutely.

1/17/08 Tr. at 17.  A copy of that transcript is attached hereto as Exhibit A.

Even without such a statement, it was patently clear from the Court's ruling that it was not issuing an opinion that was even remotely controlling on the issues presently before the Court, which is whether the IRS abused the summons authority.  First, Gerber previously demonstrated in his earlier brief (prior to the Government withdrawing the IRS summonses) that the Government had misrepresented to this Court that there had been no request for a grand jury

---

[1]  To the extent that the Government is contending that the Utah Order effectively resolves the instant proceedings, we should point out that the Utah Order is under appeal.   While unnecessary in order to grant Gerber relief, any decision by the Tenth Circuit reversing the District Court in Utah would effectively foreclose the Government from

investigation. Not only was that statement at odds with statements made to counsel for Gerber, but such misrepresentations were even more glaring when the Government tried to block discovery in the Utah case by contending that discovery was barred, inter alia, by Fed.R.Cr.P. 6(e) (relating to disclosure of matters occurring before the Grand Jury). See Supp. Mem of Richard Gerber in Support of Motion to Quash IRS Summons, filed 12/21/07. Nothing the Court said in Utah could possibly shed light on whether the Government's representations to this Court were misleading.

Second, the Utah ruling similarly does not foreclose Gerber from demonstrating that the IRS summonses were improper for the additional reason that they were violative of the Protective Orders issued by that Court. Contrary to the notion advanced here by the Government – that is investigation was untainted in any way by the use of materials obtained in violation of the Protective Orders – the Court in Utah said precisely the opposite, namely that any continuing investigation might well be tainted as "fruit of the poisonous tree." While providing that the Government was now entitled by virtue of the modification to use material previously protected from disclosure, the Court also warned that the Government does so at its possible peril. The Court in Utah explained:

> if the matter is brought to trial, the question of whether the information can be used or whether the statements can be introduced or whether any ongoing investigation or any investigation based on this can be used will be solely the province of the criminal – of the judge hearing the criminal case. That means, government, that if you're using it in an investigation and perhaps whatever, that you, I suppose, could run the risk of the criminal judge granting a motion to suppress a lot of evidence as fruits of the poisonous tree.

Id., at 14. As shown by the Court's comments set forth above, see Tr. at 17, the Court in Utah made clear that it was similarly not foreclosing this Court from finding that the Government acted improperly.

## <u>CONCLUSION</u>

The Court should Order the Government to return all documents obtained from Paine

Webber and/or Rosenau & Rosenau, and order discovery before determining what additional

remedy is appropriate.  The Court should also award attorneys fees to Petitioner.

Washington, D.C.
February 8, 2008

Curtis, Mallet-Prevost, Colt & Mosle, LLP
1200 New Hampshire Ave., N.W.
Washington, D.C.  20036
(202) 452-7340
srosenthal@cm-p.com

By _____
Samuel Rosenthal (DC Bar No. 329516)

Rosenau & Rosenau
Kenneth Rosenau
1304 Rhode Island Ave., N.W.
Washington, D.C.  20009
(202) 387-8680
Kenneth.Rosenau@rosenaulaw.com

Counsel for Petitioner Richard Gerber

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

CENTRAL DIVISION


| | |
|---|---|
| In re: | ) |
| | ) |
| SECURITIES AND EXCHANGE | ) |
| COMMISSION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )Case No. 2:02-CV-39 |
| | ) |
| MERRILL SCOTT & ASSOCIATES,| ) |
| LTD., et al., | ) |
| | ) |
| Defendant. | ) |


Transcript of Hearing



BEFORE THE HONORABLE TENA CAMPBELL



January 17, 2008



Karen Murakami, CSR, RPR
144 U.S. Courthouse
350 South Main Street
Salt Lake City, Utah 84101
Telephone: 801-328-4800

1

APPEARANCES OF COUNSEL:


For the United States:    STEPHEN J. SORENSON
                          SCOTT J. THORLEY
                          Assistant U.S. Attorneys
                          Suite 400
                          185 South State Street
                          Salt Lake City, Utah 84111



For Dr. Gerber:           CURTIS, MALLET-PREVOST, COLT &
                          MOSLE
                          By Samuel Rosenthal
                            Attorney at Law
                          Suite 403
                          1200 New Hampshire Avenue, N.W.
                          Washington, D.C. 20036-6808
                          SROSENTHAL@CM-P.COM

```
 1        Salt Lake City, Utah, Thursday, January 17, 2008
 2                          *   *   *
 3             THE COURT:  We're meeting in Securities and
 4   Exchange Commission versus Merrill Scott.  We have the
 5   parties here and also nonparties, and I won't go through
 6   your names, and also Dr. Gerber is represented, so is
 7   the United States, Mr. Sorenson and Mr. Thorley.
 8                  As I've reviewed these pleadings and Judge
 9   Nuffer's offer, I've realized that maybe I've put him in
10   an awkward position.  He really was loathe to modify an
11   order that I had signed and re-signed and once again
12   re-signed, and I can understand that he would not want
13   to do so.  As I've looked things over, it does seem to
14   me, and I looked over the transcript of that November, I
15   guess, 14th hearing.
16             MR. ROSENTHAL:  November 1st, I believe.
17             THE COURT:  November 1st, I'm sorry.
18   Clearly a lot of this, and I apologize for my errors,
19   could have been cleared up.  I clearly contemplated,
20   having been involved in the system for a long time, that
21   the SEC could turn it over to the U.S. Attorney's Office
22   and the Department of Justice, that's just sort of the
23   way it is.  When I signed that other order that did away
24   with that, I was in error.  My intent was that the SEC
25   could sign -- could give the materials.  And, therefore,
```

3

1    I can understand very clearly why the materials were

2    given to the Department of Justice if, in fact, they

3    were, the U.S. Attorney's Office.  So I am inclined not

4    to have discovery because if there was any error made

5    about handing it over and everything, it was mine, so

6    I'm saying mea culpa, you have found your culprit right

7    here.

8              There are still some other questions, and

9    that is, I don't know about returning it, I don't know

10   where we are.  I would just like to hear from all of you

11   on what everybody thinks.  Okay, identify yourself.

12             MR. ROSENTHAL:  Sam Rosenthal, Curtis,

13   Mallet-Prevost, Colt & Mosle.  The issue, Your Honor, is

14   not whether the SEC could turn over to DOJ.  The order

15   doesn't need modification, it was clearly contemplated

16   they could.  What Your Honor ruled, in addition, was it

17   could be turned over only for use in this action.  And

18   as to that, in the transcript Your Honor was very clear,

19   that the reason for that limitation was that

20   Mr. Broadbent was saying we need the information, and

21   people are reluctant because they're -- some of them are

22   being audited.  And so to the extent that the SEC, DOJ

23   needed, or the U.S. Attorney needed for use in this

24   action, there is no problem.  And, again, I don't think

25   your order needs any modification.

1            But there is a big difference between

2     turning it over to DOJ for use in this action and DOJ

3     doing what they did, and that is, giving it to the IRS.

4     If you review the November 1st transcript, that's

5     exactly what came up, and Your Honor said to everyone

6     present, well, if there's any other use, you can always

7     come back to me and we can deal with it.

8            For Dr. Gerber the problem is he relied on

9     an order that was very clear on its face, it could be

10    turned over to the U.S. Attorney for use in this action,

11    it could not be turned over to the IRS, and that's the

12    problem is because he gave a deposition, and then the

13    Department of Justice went ahead and violated your

14    order.

15           THE COURT:  Let me just ask you, the

16    deposition was already taken at that time, am I correct?

17           MR. ROSENTHAL:  It was taken only after your

18    February 2nd, 2004, protective order.

19           THE COURT:  What you're saying is there are

20    Fifth Amendment privileges?

21           MR. ROSENTHAL:  Absolutely.  In order to

22    waive them, it would have been to be knowing and

23    intelligent, and no one could knowingly and

24    intelligently believe that the Department of Justice

25    would do exactly what Your Honor precluded, and that is,

1    take it and give it to the IRS for use in an IRS

2    proceeding.  That's what happened here.  There's nothing

3    confusing or ambiguous about the record is as it existed

4    when Dr. Gerber gave his deposition.  And it became

5    clearer when Your Honor had the November 1st colloquy.

6    It became even clearer yet when Your Honor issued the

7    order after November 1st.  What you were saying, I

8    believe, most respectfully, is exactly what you said at

9    the hearing, and that is, yes, give it to DOJ for use in

10    this hearing -- in this case, but if you need it for

11    some other purpose, you've got to get permission.

12            If you look at Mr. Broadbent's comment, what

13    he says is we are not the IRS.  If they need it, they're

14    going to have to subpoena it.

15            And in response Your Honor says, if you

16    don't have any reason to change it, the protective

17    order, what would be different with the protective

18    order, which would mean that you can only disclose it in

19    this proceeding among yourselves, and if there comes any

20    other need, then you would come back and ask me.

21            So Mr. Broadbent is saying to you, these

22    people may be audited, maybe they're being audited, they

23    have a reason not to produce information.  We need it

24    for this proceeding.  And Your Honor did the very

25    practical thing in saying, okay, we'll give them a

1    protective order, they can rely on that protective

2    order, but if you need it to go beyond the Department of

3    Justice for use in this action, then you need to modify

4    the protective order.

5              And when Dr. Gerber testified, there wasn't

6    a hint, there wasn't even a suggestion that the

7    Department of Justice would do what they did in this

8    case.

9              And so I think that the magistrate judge was

10   correct in saying, well, what exactly happened?  Because

11   if you look at what the Department of Justice did and

12   you look at Mr. Bailey's explanations, there's a lot

13   missing, there's a lot that's unclear.  We think that it

14   made a lot of sense to say let's have a clear record,

15   let's find out exactly what happened, then we can decide

16   should we modify the protective order or shouldn't we,

17   but let's first know what happened before we go ahead

18   and essentially eviscerate Dr. Gerber's Fifth Amendment

19   rights.

20             THE COURT:  I see where you're going, but I

21   don't think finding out what happened is really

22   necessary.  I think the question is it has happened, now

23   what can be done with the transcript.  And that I

24   think -- for that reason I am going to grant the United

25   States' motion.  And as far as discovery on what

1    happened, that isn't going to happen.

2        Now, let's deal with, and I don't know if it

3    should be I who deals with it, or with a judge who's

4    faced with the issue in a criminal, possible criminal

5    case.  That's my problem.

6        And let me hear from the government because

7    I agree, there are Fifth Amendment issues, but I don't

8    know that I'm the one to address this in a motion.  And

9    I'm thinking, Mr. Rosenthal, the better person to

10   address this is if it comes up in a criminal context,

11   then a motion to suppress use of it might be filed and,

12   indeed, these very issues might be explored in a

13   criminal motion to suppress.

14       MR. ROSENTHAL:  We agree in part, Your

15   Honor, and the part that we agree with is, yes, if there

16   is a criminal case, and there may never may be one, then

17   we can always address suppression issues.  We disagree

18   to the extent that there is an order that provides that

19   Dr. Gerber is entitled to the return of his documents.

20   The government has not objected to that, there's been no

21   response to our cross-motion to return.

22       THE COURT:  And it should be returned.  I

23   think that's a done deal, isn't it, United States,

24   returning --

25       MR. SORENSON:  No, Your Honor, I don't think

1    it's a done deal.  I would like to correct my memory of

2    the proceeding, isn't that the court said the U.S.

3    Attorney's Office would have to come back to consult you

4    about use, that was a proposal that the respondent's

5    then attorney made to the court, it wasn't adopted by

6    the court.

7             THE COURT:  What happened is this, and I'm

8    just looking at the transcript, you're right, it's -- I

9    believe that what happened was, and I'm looking, I think

10   it was Ms. Martinez said that you had the statutory

11   obligation to share information with DOJ and that DOJ

12   had made the request.

13            And I said, well, Couldn't the protective

14   order be fashioned that would allow for a statutory

15   obligation?

16            And you say, Yep.

17            And I say, Okay, that's the order.  Anything

18   else?  And I'm -- and there was an argument made, As to

19   a protective order, I would argue, Your Honor, that you

20   have the authority to have an overall encompassing

21   protective order, even requiring the Justice Department

22   to come to you to supersede it.

23            And I don't think I was -- I did that.  All

24   I said was, I'm going to grant the motion for a

25   protective order, which I will direct all parties to

1    meet and prepare.  There will be the provision that the

2    SEC can turn the documents over pursuant to a request

3    from the Department of Justice.  So I just said you

4    could turn it over.  Now, whether -- the whole question

5    of whether Dr. Gerber knowingly waived his Fifth

6    Amendment right, which is the one that concerns me, I

7    think comes up at a motion to suppress, but you go

8    ahead.

9                MR. SORENSON:  And I agree, Your Honor.

10   Every case that has decided that particular issue has

11   ruled that a protective order is not a substitute for

12   assertion of a Fifth Amendment right and has indicated

13   that if that were the case, it would be bumping up

14   against and be intruding into the executive branch's

15   authority to grant immunity in the case.

16               THE COURT:  That's right, grant immunity.

17   But what I am saying is the question of whether it was a

18   voluntary waiver of his Fifth Amendment right really

19   isn't in front of me.

20               MR. SORENSON:  Yes.

21               THE COURT:  I do not believe because that

22   would come up in a motion to suppress.

23               MR. SORENSON:  That's correct, Your Honor.

24               THE COURT:  So I'm saying --

25               MR. SORENSON:  And if all of the evidence

10

1   that the U.S. Attorney's Office received pursuant to the

2   order required to be returned, there wouldn't be

3   anything to suppress.

4           THE COURT:  Well, that's true.  However, in

5   this day and age, that's such a technicality.  If you

6   turn it back over to Dr. Gerber and Dr. Gerber has it,

7   that doesn't mean that you don't have access to get it

8   down the road, does it?

9           MR. SORENSON:  That's correct, Your Honor.

10   The cases that have dealt with circumstances where a

11   grand jury subpoena, for example, had been served to get

12   evidence that's protected by a protective order, the

13   parties in that case were not entitled to get it back.

14           THE COURT:  There was no grand jury subpoena

15   served.

16           MR. SORENSON:  There was none that was

17   necessary because under the protective orders the U.S.

18   Attorney's Office was entitled to get it without having

19   to serve any kind of subpoena.

20           THE COURT:  Don't you think it would be a

21   clear case if you didn't serve a grand jury subpoena on

22   the SEC and got it and then it would just be, whoosh,

23   off it goes, and you have to turn it over and --

24           MR. SORENSON:  That's correct, Your Honor.

25   But in this case it wasn't necessary, and, frankly, a

1    grand jury subpoena could still be arranged, but I don't

2    think it would change the balance of the interests in

3    this case, the public's, and promoting a thorough

4    investigation and a private litigant in keeping evidence

5    away from a government authority that has the authority

6    and responsibility to investigate that criminal

7    behavior.

8            THE COURT:  Okay.  What do you say to that,

9    Mr. Rosenthal?

10           MR. ROSENTHAL:  The problem, Your Honor, is

11   if you say to the government you can have what you have

12   obtained, and we would say in violation of the language

13   in your protective order, if you say that to them,

14   essentially what you're doing is you're authorizing them

15   to obtain information that we believe was a violation of

16   the Fifth Amendment privilege.  It's almost as if you're

17   saying they can obtain information that was illegally

18   seized and use it and use the fruits of it.  So even

19   though a suppression motion is not before you in a

20   criminal case, what you're doing is you're sanctioning

21   the use of documents where there was no knowing and

22   intelligent waiver, where there essentially was, in

23   Dr. Gerber's view essentially an illegal obtaining of

24   documents and evidence, and that's the reason why it is

25   before you.  It's not just that we have a motion for the

                                                          12

1    return of the documents, but we also have a right to

2    come to you and say in your court there's been a

3    violation of the Fifth Amendment right, don't exacerbate

4    that violation by now saying to the government you can

5    go around the back door and get the information in there

6    and thereby eviscerate the Fifth Amendment.  So we think

7    the issue is before you.

8            THE COURT:  All right.  Here's what I'm

9    going to do.  First of all, and recognizing that I put

10   Judge Nuffer in an awkward position, I'm going to grant

11   the United States' motion not to have discovery on the

12   issue because I think it was my own non-clarity, and if

13   there's a culprit in the case, it was I.

14           Secondly, to the extent a protective order

15   was not clear and was modified, I want to say here

16   clearly now that I did intend that the materials be

17   turned over to the Department -- could be turned over to

18   the Department of Justice.  And, frankly, I had no

19   thought one way or the other whether it could be used in

20   a criminal proceeding.  That was not before me and it

21   still isn't.

22           Third, I am not -- I'm going to modify the

23   order, any order I have made this way:  The government

24   does not have to return the materials.  However, I want

25   to make it very clear I am -- and they can use it as I

                                                    13

1    guess they wish they can use it, except if the matter is

2    brought to trial, the question of whether the

3    information can be used or whether the statements can be

4    introduced or whether any ongoing investigation or any

5    investigation based on this can be used will be solely

6    the province of the criminal -- of the judge hearing the

7    criminal case.  That means, government, that if you're

8    using it in an investigation and perhaps whatever, that

9    you, I suppose, could run the risk of the criminal judge

10   granting a motion to suppress a lot of evidence as

11   fruits of the poisonous tree.

12          MR. SORENSON:  Yes, Your Honor.

13          THE COURT:  But that is your decision.  And

14   I just want to clarify I did not restrict how the

15   information was to be used.  I had no intention, I did

16   not sanction its use in a criminal case or a criminal

17   investigation, I did not forbid its use.  My mind was a

18   pretty blank slate.  Mr. Broadbent's statement about

19   audits, etcetera in this case certainly was made, the

20   statement regarding let the SEC come and pick that up,

21   the Department of Justice come back to you was made, but

22   my order, even though down the road I modified it, my

23   order -- the intent of my order clearly was I recognize

24   that there is a statutory provision that allows turning

25   it over to the Department of Justice, I believe that

1    that is something that I wanted the SEC to be able to

2    comply with.  What Dr. Gerber's understanding was is a

3    matter for a later day.

4         MR. ROSENTHAL:  Your Honor, just for

5    clarification, Mr. Bailey has indicated that he gave the

6    file wholesale to the IRS.  There are IRS agents who

7    take the position that they are not bound by this

8    court's order, that this court's order essentially is

9    meaningless insofar as their actions are concerned.  Is

10   Your Honor saying that the IRS can do with that file

11   that was the subject of four protective orders whatever

12   they want, or are there any restrictions on the IRS

13   taking that confidential information and using it for

14   any purpose?

15        THE COURT:  Well, they are using it for

16   their -- I don't know that they're not saying they

17   aren't bound by my order.  I think what they were saying

18   is that my order gave them the right to do that.  My

19   order did not address it.  That really was not something

20   that I addressed.  I am not going to say whether

21   Dr. Gerber knowingly gave up his Fifth Amendment rights.

22   I simply don't have enough to know on that, and it would

23   be simply an advisory opinion.  However, I'm saying that

24   I said to the SEC, you can turn it over to the

25   Department of Justice, and they can use it, I suppose,

1    as they believe they are allowed to do, and bearing in

2    mind, of course, they could run the risk of everything

3    being suppressed as fruits of the poisonous tree, and

4    that they can do in a criminal prosecution.  All right.

5              MR. ROSENTHAL:  I understand -- I think what

6    Your Honor is saying is there's know guidance to an IRS

7    agent who is now sitting there with a file as to what he

8    can or cannot do.

9              THE COURT:  Well, I don't say about giving

10   the guidance.  He's got it, he's got it, he's got that

11   file.

12             How do you view that, counsel?

13             MR. SORENSON:  The way Your Honor does.  I

14   think that the resolution of that issue is something

15   that is properly raised in a criminal trial and when a

16   criminal trial comes to pass, but that's the forum to

17   address those issues.

18             THE COURT:  The only issue really I think in

19   a criminal trial, I don't think the judge in a criminal

20   trial would really be too concerned with what I've said,

21   except as it goes to whether Dr. Gerber voluntarily

22   waived his Fifth Amendment rights.  What I'm saying is

23   what I did then really has not much bearing, in fact, it

24   goes only to his state of mind what he ruled.  All

25   right?

1              So the IRS will do with it what they will do

2      with it.  I'm not going to tell the IRS how to conduct a

3      criminal investigation.  They can do with it as part of

4      their criminal investigation.  It's not for me to advise

5      the IRS.  My order, protective order, simply has to do

6      with what it did.  The case has just about wound up.  I

7      intended that it could go to the Department of Justice.

8      I recognize that the IRS is part of the Department of

9      Justice.  I had no thought one way or the other of the

10     Fifth Amendment.  That's for another day.

11             MR. ROSENTHAL:  Your Honor, there's another

12     proceeding in Washington, D.C. in Federal District Court

13     there, and I take it nothing Your Honor is ruling here

14     is intended to impact on that proceeding and that's up

15     to that judge handling that case.

16             THE COURT:  Absolutely, absolutely.

17             MR. ROSENTHAL:  Your Honor, we believe the

18     issue is an important one, and in the event that my

19     client does want to appeal, I assume that this would be

20     a final order and it would be appealable.

21             THE COURT:  I don't know.  File your motion.

22     I would have to look at the law.  I have no objection to

23     anything if it complies with the law.

24             MR. ROSENTHAL:  Okay.  Thank you, Your

25     Honor.

```
1              MR. SORENSON:  Thank you, Your Honor.

2              THE COURT:  I'll prepare an order so you can

3     do what you need to do.

4              MR. SORENSON:  Thank you, Your Honor.

5              (Whereupon, the matter was concluded.)

6                              *   *   *

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    C E R T I F I C A T E

 2

 3

 4   State of Utah

 5   County of Salt Lake

 6

 7        I, Karen Murakami, a Certified Shorthand Reporter

 8   for the State of Utah, do hereby certify that the

 9   foregoing transcript of proceedings was taken before me

10   at the time and place set forth herein and was taken

11   down by me in shorthand and thereafter transcribed into

12   typewriting under my direction and supervision;

13        That the foregoing pages contain a true and

14   correct transcription of my said shorthand notes so

15   taken.

16        IN WITNESS WHEREOF, I have hereunto set my hand

17   this     day of          , 2008.

18

19

20

21                              Karen Murakami, CSR, RPR

22

23

24

25
```

19

# CERTIFICATE OF SERVICE

I hereby certify that the following Memorandum of Points and Authorities of Richard Gerber in Opposition to the United States Supplemental Response to Motion of the Petitioner Richard Gerber for an Order Requiring the Government to Return all Materials Obtained Pursuant to Summonses Issued to Paine Webber and Rosenau & Rosenau and for Attorney Fees Pursuant to 26 U.S.C. Section 7430 was served electronically through ECF on counsel for the United States as follows:

Richard G. Jacobus
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 227
Ben Franklin Station
Washington, D.C. 20044

_____/s/_____
Samuel Rosenthal

Dated:  February 8, 2008